UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JILL R. LECKRON,

                       Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                       Defendant.

Case No. 3:11-cv-05218-RBL-KLS

REPORT AND RECOMMENDATION

Noted for March 9, 2011

      Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

      On December 1, 2006, plaintiff filed an application for disability insurance benefits,

REPORT AND RECOMMENDATION - 1

alleging disability as of June 2, 2001, due to depression, attention deficit hyperactivity disorder ("ADHD"), panic attacks, and anxiety. See Administrative Record ("AR") 50, 133. Her application was denied upon initial administrative review and on reconsideration. See AR 50, 65, 76. A hearing was held before an administrative law judge ("ALJ") on May 13, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 12-44.

On June 25, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 50-64. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on January 21, 2011, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 404.981. On March 22, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1-#3. The administrative record was filed with the Court on August 29, 2011. See ECF #13. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred in failing to: (1) properly consider all of her "severe" impairments; (2) properly account for all of the limitations assessed by Paul Michels, M.D., an examining psychiatrist, and reported by Teresa Summers, plaintiff's former supervisor; (3) offer valid reasons for discounting plaintiff's credibility; (4) properly assess her residual functional capacity; and (5) find her disabled at step five of the sequential disability evaluation process.[1] The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that

---

[1] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.

REPORT AND RECOMMENDATION - 2

while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.  The ALJ's Step Two Determination

At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841

REPORT AND RECOMMENDATION - 3

F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

At step two in this case, the ALJ found plaintiff had severe impairments consisting of plantar fasciitis, ADHD, a generalized anxiety disorder, a post traumatic stress disorder, and a major depressive disorder. See AR 52-53. Plaintiff argues the ALJ should have found she had a severe back impairment at this step as well, relying on her testimony and self-reports regarding her alleged back-related symptoms and limitations (see AR 23-25, 503), on electro-diagnostic evidence of a herniated disc (see AR 511, 515) and on one physician's apparent opinion that she was not a candidate for back surgery (see AR 515). But the mere existence of an impairment is insufficient proof of disability or significant work-related limitations stemming from the alleged impairment. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).

The fact that plaintiff is not considered by one physician to be a candidate for surgery is also an insufficient basis for establishing step two severity. That is, just because plaintiff was not recommended for one form of treatment, this does not necessarily mean she has any work-related limitations, without actual evidence of such. Finally, while the ALJ must take into account a claimant's alleged pain and other symptoms at step two (see 20 C.F.R. § 404.1529), the severity determination is made solely on the basis of objective medical evidence:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. *At the second step of sequential evaluation, then, medical evidence alone is*

REPORT AND RECOMMENDATION - 4

> *evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities. . . .*

SSR 85-28, 1985 WL 56856 *4 (emphasis added). Accordingly, plaintiff has not made the type of evidentiary showing required to establish severity at step two with respect to her alleged back impairment.

II. The ALJ's Evaluation of the Opinion of Dr. Michels

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

REPORT AND RECOMMENDATION - 5

1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

In her decision, the ALJ found in relevant part as follows:

. . . In a psychiatric evaluation with Paul Michels, M.D.[,] on February 13, 2007, Dr. Michels noted that the claimant drove herself and walked into the interview room without difficulty (Exhibit 5F). The claimant reported that she had missed work because of anxiety related to her ADHD, social anxiety, generalized anxiety disorder, and major depression. The claimant reported that she had had panic attacks for over 20 years. The only medication she took was Ritalin and Tylenol as needed. She had been in formal mental health treatment for year s[sic] with a psychiatrist. She tried therapy and found it not helpful. Dr. Michels diagnosed the claimant with major depressive disorder,

REPORT AND RECOMMENDATION - 6

> panic disorder with agoraphobia with a GAF [score] of 50 to 55.[2] He said
> that her focus and concentration seemed mildly impaired. Her pace and
> persistence seem moderately impaired. He concluded that she probably has
> the intellectual capacity to understand, remember, and follow complicated or
> simple instructions. Her depression and anxiety and difficulties with
> interpersonal relationships would likely create troubles completing specific
> tasks in a timely or consistent manner. Interactions with others might pose
> great difficulty and stress might be met with a pattern of maladaptive coping
> which may perpetuate or intensify the underlying depressive and anxiety
> symptoms. She did seem to have the basic capacity to manage her finances.
> The undersigned has assigned probative weight to the opinion of Dr. Michels
> because of his board certification in psychiatry and neurology and because his
> opinion is consistent with the medical evidence of record.

AR 60-61. As discussed in further detail below, the ALJ assessed plaintiff with the following mental residual functional capacity ("RFC"):

> **. . . She requires simple unskilled work that does not require intense concentration, although she can remain on task; should have only minimal interaction with co-workers; brief and superficial contact with the general public; and routine low stress work that does not involve frequent changes or adaptations, taking initiative or making independent decisions.**

AR 59 (emphasis in original).

Plaintiff argues the above RFC assessment fails to take into adequate account the opinion of Dr. Michels that "[h]er depression and anxiety and difficulties with interpersonal relationships would likely create troubles completing specific tasks in a timely or consistent manner." AR 253. Defendant argues the ALJ's assessed limitations on interaction with co-workers and contact with

---

[2] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007). It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). "A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") at 34). "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta, 500 F.3d at 1076 n.1 (quoting DSM-IV at 34); see also England, 490 F.3d at 1023, n.8 (8th Cir. 2007) (GAF score of 50 reflects serious limitations in general ability to perform basic tasks of daily life).

REPORT AND RECOMMENDATION - 7

the general public and restriction to routine low stress work, adequately accounts for the issues in completing specific tasks found by Dr. Michels. But Dr. Michels clearly stated that the issues in completing specific tasks were attributable to plaintiff's depression and anxiety, as well as to her difficulties with interpersonal relationships. Nor does low stress work or a limitation on contact with others necessarily take into account the ability to *complete* tasks. Accordingly, the ALJ did not adequately account for this latter work-related limitation or provide an adequate explanation as to why it was not included in the RFC assessment.

III.   The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan, 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

REPORT AND RECOMMENDATION - 8

credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284. The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

In this case, the ALJ discounted plaintiff's credibility in part on the basis that her alleged disabling symptoms and limitations were inconsistent with the medical evidence in the record. See AR 60-62; Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (finding that claimant's complaints are "inconsistent with clinical observations" can satisfy clear and convincing requirement). As plaintiff has not shown the ALJ's evaluation of the objective medical evidence in the record is inconsistent with the ALJ's assessment of her *physical* residual functional capacity discussed in further detail below, the ALJ did not err in finding plaintiff to be not fully credible on this basis.

On the other hand, as discussed above, the ALJ did err in evaluating the opinion of Dr. Michels, and therefore her reliance on the objective medical evidence regarding plaintiff's *mental* impairments and limitations to discount her credibility cannot be upheld. Further, a claimant's pain testimony may not be rejected "*solely* because the degree of pain alleged is not supported by objective medical evidence." Orteza v. Shalala, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir.1991) (en banc)) (emphasis added); see also Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir.2001); Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989). The same is true with respect to a claimant's other subjective complaints as well. See Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir. 1995) (finding that while Bunnell was couched in terms of pain complaints, its reasoning also extended to non-pain complaints).

The ALJ's other stated reasons for discounting plaintiff's credibility, however, cannot

REPORT AND RECOMMENDATION - 9

withstand scrutiny. Those reasons are as follows:

- **The claimant's exaggeration of subjective complaints and functional limitations undermines the credibility of the claim.** One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record. This consistency is lacking in the record before the undersigned. As outlined above, the claimant's essential allegation is that her impairments are so significant that she cannot perform work activity. Despite these allegations, the claimant's treatment notes indicate that the claimant was able to work in 2005, 2006, and in 2007 (Exhibit 1D). She was also able to play softball and golf in 2007.

- **The claimant's work history undermines the credibility of the claimant's allegations in this case**. The claimant's earnings record reflects that she had been able to engage in significant gainful activity after her alleged disability onset date (Exhibit 1D).[3] Such a work history raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments.

AR 62. While the record may show plaintiff engaged in significant gainful activity during these years – at least in terms of the amount of money earned (see AR 20, 52, 97-111) – it also shows she worked in multiple jobs for short periods during that time, including apparently six alone in 2006 (see AR 20, 97-111). This last fact, contrary to defendant's assertion, indicates plaintiff's ability to engage in full-time employment is compromised.

Plaintiff's testimony and the report of Ms. Summers, her former supervisor, also indicate she was unable to maintain such employment due to her mental impairments. Thus, for example,

---

[3] As the ALJ noted at step one of the sequential disability evaluation process:

> The claimant worked after the alleged disability onset date and this work activity did rise to the level of substantial gainful activity in 2001 and 2006. The claimant's earnings record reflects the claimant earned $15,647 in 2001 and $17,099 in 2006 (Exhibit 1D). Ordinarily, an individual's earnings from work activities as an employee show that the individual has engaged in substantial gainful activity if his or her earnings averaged more than $740.00 per month or $8,880 per year beginning January 2001 and more than $860.00 per month or $10,320 per year beginning January 2006. . . .

AR 52; see also AR 101-111. Despite determining that plaintiff's "earnings record" reflected that she had "engaged in substantial gainful activity," the ALJ nevertheless proceeded on with the disability evaluation process. AR 52; see Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (claimant not entitled to disability benefits for any period of time during which he or she has engaged in substantial gainful activity); see also 20 C.F.R. § 404.1520(a)(4)(i), (b).

REPORT AND RECOMMENDATION - 10

plaintiff testified that she was terminated from all six of jobs she had in 2006, because of her difficulties with interpersonal relationships, and that she had to call in sick "a lot" due to anxiety. See AR 20-21, 34-35. This is consistent with the opinion of Dr. Michels that "[h]er depression and anxiety and difficulties with interpersonal relationships would likely create troubles completing specific tasks in a timely or consistent manner." AR 253. Further, Teresa Summers, plaintiff's former supervisor, reported in the questionnaire she completed that plaintiff "did not get along with all of her coworkers," that she "was allowed to miss more work than other staff in the office" and "adjust her hours to assist in covering missed time" and that "due to her medical issues she was not here enough to complete the work [Ms. Summers] needed done." AR 114-15. Accordingly, it is far from clear that the jobs plaintiff performed during the years of 2005, 2006 and 2007, is sufficient to discount her credibility.

Indeed, as noted by plaintiff, the Social Security Administration classified the 2006 jobs she performed as unsuccessful work attempts. See AR 125. Although plaintiff did testify at one point in the hearing that she earlier had reported having not worked since 2001 (see AR 21-22), she testified as well that she performed the other jobs discussed above (see AR 20-21). Further, while this does indicate some inconsistency in plaintiff's testimony, the ALJ did not appear to fault her for that discrepancy or rely on it as a basis for finding her to be not entirely credible. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (error to affirm credibility decision based on evidence ALJ did not discuss).

As for the ALJ's statement that plaintiff was "able to play softball and golf in 2007" (AR 62), the only evidence of the nature and extent of her participation in these two activities during this period is a notation made in early May 2007, and again in early June 2007, that they were hobbies of hers. See AR 296, 300. To determine whether plaintiff's symptom complaints are

REPORT AND RECOMMENDATION - 11

credible, the ALJ may consider her daily activities. Smolen, 80 F.3d at 1284. Such complaints may be rejected if plaintiff "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. She need not be "utterly incapacitated" to be eligible for disability benefits, though, and "many home activities may not be easily transferable to a work environment." Id.

A claimant's activities also can "contradict his [or her] other testimony." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). As indicated, there is no evidence in the record as to exactly how frequently or for how long plaintiff may have participated in playing softball or golf. See AR 30 (plaintiff testifying that "the last time [she] played softball was in 2000, and the last time [she] golfed was probably 2005," and that she did not "do either right now"); but see AR 236 (reporting in late January 2007, first experiencing sharp pain in her right heel "while golfing about 1 month prior", but nevertheless providing no further details in regard thereto). Thus, the record fails to show plaintiff has spent a substantial part of her day performing those activities or that they are transferrable to a work setting. For the same reason, the lack of evidence regarding her ability to play softball and to golf also does not necessarily contradict plaintiff's testimony regarding her mental or physical complaints. Accordingly, the ALJ has not provided sufficiently valid reasons for discounting plaintiff's credibility in this case.

IV.     The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly

REPORT AND RECOMMENDATION - 12

link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

As discussed above, the record contains a questionnaire completed by Teresa Summers, in which she sets forth her observations of plaintiff's job performance and productivity during the time when she was plaintiff's supervisor. See AR 114-15. In regard to that questionnaire, the ALJ found in relevant part as follows:

> . . . Ms. Summers wrote that the claimant worked for her on a temporary basis as a billing specialist from July 16, 2006 through October 17, 2006. The quality of the claimant's work was very good; it was only the quantity that was lacking. She wrote that the claimant was a hard worker, not easily distracted, and she worked best independently. She worked well with the claimant, but the claimant did not get along with all of her co-workers. The claimant was able to handle deadlines, changes, and decision making with her primary workload just fine. She did have issues with changes in the type of work and did not respond well to uncertainty. Ms. Summers also allowed the claimant to miss work more than other staff in the office and she was allowed to adjust her hours to assist in covering the missed time. The claimant was terminated because the job required a 40-hour a week person and because, due to the claimant's medical issues, she was not at work enough to complete the work that needed to be done. The undersigned has assigned probative weight to the opinion of Ms. Summers because it is inconsistent with the medical evidence of record.

AR 62. Plaintiff asserts that despite assigning "probative weight" to the questionnaire completed by Ms. Summers, the ALJ did not account for her report that plaintiff "was allowed to miss more work than other staff in the office" and "adjust her hours to assist in covering missed time." AR 115. In failing to do so, plaintiff argues, the ALJ erred. The undersigned agrees.

Defendant argues the other mental limitations the ALJ assessed plaintiff, discussed in further detail elsewhere herein, "belie the notion that the ALJ did not fairly consider" the specific statements regarding missed work and adjusted hours. ECF #19, p. 8. The issue here, however, is not whether the ALJ fairly considered that report, but whether the ALJ properly accounted for

REPORT AND RECOMMENDATION - 13

them in her decision. Defendant goes on to argue that the ALJ had no obligation to credit those statements, because Ms. Summers, "as a lay person" had "no knowledge as to <u>why</u>" she "did not show up enough" at work or "what else" she "may have been capable of doing." <u>Id.</u> (emphasis in original). But Ms. Summers was plaintiff's supervisor, and therefore was in a good position to observe her performance and to have direct knowledge of the reasons why plaintiff was unable to maintain a full-time presence at work. Defendant's argument is thus rejected.

V. <u>The ALJ's Assessment of Plaintiff's Residual Functional Capacity</u>

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. <u>See id.</u> It thus is what the claimant "can still do despite his or her limitations." <u>Id.</u>

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. <u>See id.</u> However, an inability to work must result from the claimant's "physical or mental impairment(s)." <u>Id.</u> Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." <u>Id.</u> In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." <u>Id.</u> at *7.

As noted above, the ALJ assessed plaintiff with the following mental residual functional capacity ("RFC"):

REPORT AND RECOMMENDATION - 14

> **. . . She requires simple unskilled work that does not require intense concentration, although she can remain on task; should have only minimal interaction with co-workers; brief and superficial contact with the general public; and routine low stress work that does not involve frequent changes or adaptations, taking initiative or making independent decisions.**

AR 59 (emphasis in original). In addition, the ALJ found plaintiff to be capable of performing light work, with the additional physical limitations that she could not climb ladders, ropes or scaffolds, and that she could only occasionally climb stairs, crawl, bend, stoop, and twist. See AR 59. Plaintiff argues that in light of the errors committed by the ALJ in failing to consider all of her severe impairments,[4] in evaluating the opinion of Dr. Michels, in assessing her credibility, and in dealing with the lay witness evidence provided by Ms. Summers, a more restrictive RFC assessment should have been provided. The undersigned agrees that because the ALJ erred as discussed above, it is far from clear that the ALJ's assessment of plaintiff's residual functional capacity is entirely accurate. Whether a more restrictive RFC assessment is warranted, however, remains to be seen on remand.

VI. The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

---

[4] Specifically, plaintiff argues she should have been found incapable of performing light work due to the limitations caused by her back impairment. But because, as discussed above, the ALJ did not err in failing to find she had such an impairment, or any significant work-related limitations stemming therefrom, she was not obligated to include any such limitations in his RFC assessment.

REPORT AND RECOMMENDATION - 15

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 39-40. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 40-41. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 63-64.

Plaintiff argues the vocational expert testified at the hearing that the difficulties she had in completing specific tasks in a timely or consistent manner Dr. Michels found she had, would result in an inability to maintain employment. As defendant notes, though, while the vocational expert testified that an individual who was "unable to complete tasks *at all* . . . [w]ould not be able to remain employed" (AR 43 (emphasis added)), Dr. Michels merely opined that plaintiff's depression, anxiety and difficulties with interpersonal relationships "would likely create troubles completing specific tasks," without further defining the extent of such troubles (AR 253). Thus, it is far from clear that Dr. Michels felt plaintiff was unable to complete *any* tasks.

REPORT AND RECOMMENDATION - 16

The undersigned also rejects plaintiff's contention that she should be found incapable of working on the basis of the report of Ms. Summers that she was not at work enough to be able to complete the work that needed to be done. Plaintiff asserts that although the vocational expert in this case did not so specifically testify, vocational experts "routinely testify" that individuals who missed more than one day of work a month on a regular basis would have difficulty maintaining employment. ECF #18, p. 16. But the vocational expert in this case did *not* so testify. Nor does the undersigned find it appropriate to reverse an ALJ's step five finding based on what generally vocational experts may testify to in regard to employability.

That is, the Court must look to the actual evidence before it, rather than conjecture, in making its decision. In any event, the report of Ms. Summers fails to specify how much work plaintiff missed, even if plaintiff is correct in her assertion regarding vocational expert testimony in general on this issue. On the other hand, because as discussed above, the ALJ erred in his evaluation of the findings of Dr. Michels and the statements of Ms. Summers, in his assessment of plaintiff's credibility and in his assessment of her residual functional capacity, it is far from clear that the hypothetical question the ALJ posed to the vocational expert – and thus the ALJ's step five determination overall – is supported by substantial evidence.

VII. This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate

REPORT AND RECOMMENDATION - 17

award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record concerning plaintiff's mental limitations, her mental residual functional capacity and her ability to perform other jobs existing in significant numbers in the national economy, it is appropriate to remand this matter for further administrative proceedings.

Plaintiff argues the evidence the ALJ improperly rejected should be credited as true here. Where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion generally is credited "as a matter of law." Lester, 81 F.3d at 834 (citation omitted). However, where the ALJ is not required to find the claimant disabled on crediting of evidence, this constitutes an outstanding issue that must be resolved, and thus the Smolen test will not be found to have been met. Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003). Further, "[i]n cases where the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence," the Ninth Circuit "consistently [has] remanded for further proceedings rather than payment of benefits." Bunnell, 336 F.3d at 1116. Because, as discussed herein, it is far from clear that the ALJ was required to find plaintiff

REPORT AND RECOMMENDATION - 18

disabled, and because the vocational expert did not address the mental limitations found by Dr. Michels that the ALJ failed to properly evaluate, remand for outright payments of benefits is not warranted at this time.

In addition, the Ninth Circuit has held that remand for an award of benefits is required where the ALJ's reasons for discounting the claimant's credibility are not legally sufficient, *and* "it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony." Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003). The Court of Appeals in Connett went on to state, however, that it was "not convinced" the "crediting as true" rule was mandatory. Id. Thus, at least where – as in this case for the reasons discussed herein – findings are insufficient as to whether a claimant's testimony should be "credited as true," it appears here too the courts "have some flexibility in applying" that rule. Id.; but see Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (applying "crediting as true" rule, but noting its contrary holding in Connett).[5]

Lastly, where lay witness evidence has been improperly rejected, that evidence may be credited as a matter of law as well. See Schneider v. Barnhart, 223 F.3d 968, 976 (9th Cir. 2000) (noting that when lay evidence rejected by ALJ was given effect required by federal regulations, it became clear claimant's limitations were sufficient to meet or equal listed impairment). Again, though, as noted by the Ninth Circuit, the courts have "some flexibility" in how they apply the "credit as true" rule, such as where the record fails to definitively establish that a claimant should be found disabled. Connett, 340 F.3d at 876. Further, Schneider dealt with the situation where

---

[5] In Benecke, the Ninth Circuit found the ALJ not only erred in discounting the claimant's credibility, but also with respect to the evaluations of her treating physicians. 379 F.3d at 594. The Court of Appeals credited both the claimant's testimony and her physicians' evaluations as true. Id. It also was clear in that case that remand for further administrative proceedings would serve no useful purpose and that the claimant's entitlement to disability benefits was established. Id. at 595-96. Such is not the case here.

REPORT AND RECOMMENDATION - 19

defendant failed to cite any evidence to contradict the statements of five lay witnesses regarding the claimant's disabling impairments. 223 F.3d at 976.

CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court find the ALJ improperly concluded plaintiff was not disabled. The undersigned thus recommends as well that the Court reverse defendant's decision and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **March 9, 2011**, as noted in the caption.

DATED this 17th day of February, 2012.

Karen L. Strombom
United States Magistrate Judge